## Case No. 11,255.

### POLLOCK v. LAWRENCE COUNTY.

[7 Pittsb. Leg. J. 373; 3 West. Law Month. 68; 2 Pittsb. Rep. 137.]

Circuit Court, W. D. Pennsylvania.　May 31, 1860.

MUNICIPAL CORPORATIONS — WHAT IS AN APPROPRIATION — EXCESS OF EXPENSES — VIGILANT CREDITORS—EXECUTION—ADOPTION OF PROCESS OF STATE COURT—ATTACHMENT—REQUISITES OF ANSWER.

1. An answer should be a counter statement of facts, a confutation of what is alleged by the other party, and should be neither evasive nor argumentative.

2. The annual estimate of the probable expenses of the county for the ensuing year, required by law to be made by the commissioners, is not an appropriation.

3. An appropriation is to set apart or vote a sum of money for a particular object.

4. There is no appropriation of any part of the common fund, until the commissioners, by their warrant on the treasurer, indicate the specific object to which it is to be applied or set apart. It is then severed from the mass and "appropriated," and not before.

5. When unfortunately the current expenses exceed the current income, and all cannot be promptly paid, to the vigilant must be given the first products of the treasury.

6. No capricious application of the public funds by the commissioners, in the face of a debt solemnly adjudicated, and after notice of an execution commanding its payment, will be permitted.

7. The execution provided by the act of 1834, relative to counties, operates as an injunction upon the commissioners, restraining them from drawing any warrant, or making any payment for any purpose whatever, until the judgment is satisfied.

8. The jurisdiction of a court is not exhausted, by the rendition of its judgment, but continues until the judgment shall be satisfied.

9. The writ authorized by the act of 1834 is not the prerogative writ of mandamus, for that can issue without a judgment, but this cannot.

10. Neither is it an original proceeding against the commissioners, but an execution and final process to enforce the payment of a judgment.

11. There can be no just ground of complaint, when the courts of the United States adopt the process of the courts of the state.

12. A refusal to obey the command of the execution, will be followed by an attachment against the commissioners.

At law.

Mr. Taylor, for plaintiff.
Mr. M'Combs, for defendant.

McCANDLESS, District Judge. This case was tried by jury at the November term of the circuit court, and a verdict and judgment rendered in favor of the plaintiff for the sum of $1,811.30. On the 4th day of January last, the counsel for the plaintiff issued his writ of special fi. fa., authorized by the act of the legislature of Pennsylvania of 1834. and adopted by this court as part of its final process against counties. To this writ the marshal made return that on the 12th of January he had duly served the same

on Isaac P. Cowden, Robert Fullerton and Thos. Cairns, commissioners of the county of Lawrence, and also upon the treasurer thereof. The commissioners having failed to pay any portion of the judgment, on the 7th of April plaintiff's counsel presented his petition to the court, charging that at the date of the service of this writ, "there were moneys in the treasury of said county, and subject to the order and warrant of said commissioners, to the amount of $5,800, unappropriated." That since the said service, "there has been received into the treasury, and subject to the warrant of the commissioners, the further sum of $2,000." Nevertheless that the said commissioners "being minded to evade the payment of the said judgment, and set at naught the process of this court, although often requested, have refused to pay, to the great wrong of the plaintiff, and the contempt of this court." He then prays the court for a rule on the said commissioners, to show cause why an attachment should not issue against them according to law. The rule was granted returnable at the first Monday of May. On that day the commissioners appeared by counsel, and put in their answer. After admitting the service of the writ upon the 12th January, they say that, at that date, "there were no unappropriated funds of said county under the power and control of these respondents, and for further answer they show that before the judgment in this case was obtained, and before these respondents knew that the said county would be liable to pay the debt for which it was rendered, the county commissioners of said county had made their estimates of the probable expenses of the said county for the ensuing year, and to the specific purposes embraced in said estimates, and, according to the laws of the state of Pennsylvania, all the revenues of the said county were appropriated." They further state, "that the whole receipt of moneys which have come under the control and power of the respondents, as the money of the county, is $1,727.48, and these moneys were solely provided for the purposes of the county, incident to the public weal and the administration of justice." An answer should be, what its name purports, a counter statement of facts, a confutation of what is alleged by the other party, and should be neither evasive nor argumentative. This is not a plain, direct statement of facts, responsive to the petition. It is evasive in not stating the amount of money in the treasury at the date of the service of the writ—that we have to glean from the statement of the treasurer. And to support the allegation that there was no money "under their control," it is argumentative in construing the annual estimate of the probable public expenditures to be a specific appropriation to each object.

By the act of 15th of April, 1834 (Purd. Dig. 777), "the commissioners of every county shall, at their first meeting, after the general election in every year, proceed to make an estimate of the probable expense of the county for the ensuing year." This is no appropriation. It is merely to calculate or compute what will be the probable expenses of the county for the next year, and to levy their tax accordingly. They cannot anticipate the public expenditure precisely, and hence they are to "estimate" the "probable" amount. They cannot foresee the exact amount required for each municipal purpose, and hence they cannot make a specific appropriation. An appropriation is to set apart, or vote a sum of money, for a particular object. And such appropriation, at the date of their annual estimate, would be impracticable for the reason that a considerable portion of the taxes assessed for the current year are not collected for years after, and much of the ordinary expenditure is paid out of funds which accumulated from the taxes of previous years. There is no appropriation of any part of the common fund, until the commissioners, by their warrant on the treasurer, indicate the specific object to which it is to be applied or set apart. It is then severed from the mass, and "appropriated," and not before. The treasurer is the mere custodian of the public money. The commissioners have the control of it; for none can be lawfully drawn from the treasury without their warrant. To them is confided the high prerogative of taxation, and the failure to exercise it, by them or their predecessors, is no legitimate answer to an execution. They are required by law to provide for certain municipal objects, to support their convicts, to build bridges, to maintain their courts of justice; but as the supreme court of Pennsylvania says in 4 Casey [28 Pa. St.] 210: "When unfortunately the current expenditures exceed the current income, and all cannot be promptly paid, to the vigilant must be given the first products of the treasury." And again: "No statutory regulation or appropriation by the city councils can give a higher sanction to the liquidation of a debt, than the judgment of a court of justice, in pursuance of law, that the debt is due and must be paid." So no capricious application of the public funds by the commissioners, in the face of a debt solemnly adjudicated, and after notice of an execution commanding its payment, can be held guiltless in sight of the law. The execution is an injunction upon the commissioners, restraining them from drawing any warrant, or making any payment for any purpose whatever, until the judgment is satisfied. If there are no unappropriated moneys, it is to be paid "out of the first moneys that shall be received for the use of said county." The language of the act is plain, and the duty of these officers imperative. They have no option or alternative, and a disregard or disobedience of the writ is followed by attachment.

By the county auditor's report for the year 1859, there appears to be a balance in the

hands of the treasurer of $6,478.42. This is only constructively so, for a large proportion of this sum is in the custody of his predecessors in office, who have not yet accounted for the same. We cannot hold the commissioners responsible for a contempt in refusing to apply what is not actually in the treasury. But the proofs before the court show, that at the date of the service of this writ of execution, on the 12th day of January last, there was in the treasury in money $639.86. The treasurer testifies that since that date he has received moneys of the county from other sources than his predecessor, $1,559.78, and from him $238.45, making in the aggregate $2,438.09, applicable to this execution, and more than sufficient to satisfy the same. The proofs further show, that, disregarding the command of the writ, from the date of service, to the 11th of May, the commissioners have drawn warrants on the treasurer to the amount of $3,997.74. Thus in violation of law, and to the prejudice of a judgment creditor refusing to pay his debt "out of the first moneys that shall be received for the use of such county." We are not here to enquire into the consideration of this judgment. It has received the sanction of a court of competent jurisdiction, and the creditor is entitled to its fruits, as if predicated of a cause of action the most meritorious. It must be enforced, otherwise judicial proceedings would be a mere mockery.

It is proper that the court should here notice the points submitted in the very able argument of the counsel for the respondents.

1. It is contended that we have no jurisdiction; that the courts of the United States have no control over state or county officers. It will not be denied that we have jurisdiction over the parties and the subject matter, the plaintiff being a citizen of the state of Ohio, the defendants citizens of Pennsylvania, and the sum in controversy is over $500.00. Does this jurisdiction terminate with the judgment? It has been decided otherwise by the supreme court of the United States, in Wayman v. Southard, 10 Wheat. [23 U. S.] 23. The jurisdiction of a court is not exhausted by the rendition of its judgment, but continues until that judgment shall be satisfied. Many questions arise on the process subsequent to the judgment, in which jurisdiction is to be exercised. Were it even true that jurisdiction could technically be said to terminate with the judgment, an execution would be a writ necessary for the perfection of that which was previously done; and would consequently be necessary to the beneficial exercise of jurisdiction.

2. To sustain the second branch of the proposition it is argued that the writ authorized by the act of 1834, is a mandamus, and an original proceeding against the commissioners. But it is not the prerogative writ of mandamus, for that can issue without a judgment, and this cannot. As the cases cited at the argument show, that was a very imperfect remedy for the creditor, and its deficiency was one of the reasons for the enactment of this law. The commissioners of the Civil Code in their report of 1832, at page 6, strongly urge its passage by the legislature, because "the mechanic or tradesman who deals with the commissioners in their official capacity, has no ascertained remedy at present, to obtain payment of his demand, but the tedious and expensive course of an application to the supreme court for a mandamus, which, if obtained, may be from various causes, altogether unavailing." They declined to recommend the sale of county property, but proposed this writ of execution, obedience to which was to be enforced by attachment, "as affording greater expedition than at present exists." It is clear therefore that it is an execution, to enforce the payment of a judgment; that it is final process, and not an original proceeding against the commissioners, who are the tangible parties indicated in the act, upon whom all writs are to be served from the beginning.

To avoid prolixity the court need not repeat here what was said in the opinion delivered in the Oelrichs Case [Case No. 10,444] and the Dobbin Case [Id. 3,941] as to the legitimate and constitutional power of this court to add to or alter its process at discretion. There can be no just ground of complaint, when the courts of the United States adopt the process of the courts of the state. We have adopted this act of Pennsylvania of 1834, as part of the final process of this court, to enable citizens of other states seeking justice in the courts of the United States to reap the fruits of their judgments as readily as the citizens of this state, suing in their own courts, and expect a cheerful submission to its provisions.

The respondents, Isaac P. Cowden, Robert Fullerton and Thomas Cairns, commissioners of the county of Lawrence, having disobeyed the command of the writ of special fi. fa. issued in this case, the rule is made absolute and attachments awarded.